MARCIA BRETTON vs. STATE LOTTERY COMMISSION &
another.[1]

No. 95-P-826.

Essex. September 10, 1996. - November 26, 1996.

Present: DREBEN, JACOBS, & FLANNERY, JJ.

Lottery. *Consumer Protection Act*, Governmental entity, Trade or com-
merce. *Administrative Law*, Adjudicatory proceeding, Judicial review.

The State Lottery Commission, a statutorily created entity, is not a
"person" subject to the provisions of G. L. c. 93A, nor do its activities
constitute "trade or commerce" within the meaning of that statute.
[737-740]
A plaintiff in a civil action was not entitled to maintain separate·common
law claims alleging breach of contract, deceit and negligent misrepresen-
tation against the State Lottery Commission, where the plaintiff had
raised those issues in an administrative hearing before the commission
that was subject to judicial review under G. L. c. 30A, where the com-
mission had addressed the issues, and where the plaintiff did not raise
them in her claim for review. [740-742]


CIVIL ACTION commenced in the Superior Court Depart-
ment on October 28, 1992.

The case was heard by *Elizabeth B. Donovan*, J., and mo-
tions for relief from judgment and for judgment on the plead-
ings were heard by *Peter F. Brady*, J.

*Thomas J. Gleason* for the plaintiff.

*Pierce O. Cray*, Assistant Attorney General, for the
defendants.

JACOBS, J. When the plaintiff won second prize in the
"Mass Millions" lottery held on July 16, 1991, she expected
to collect something close to the "average of $50,000"
advertised by the defendant State Lottery Commission (com-

---

[1] Eric M. Turner, the executive director of the commission. No argument
has been made for independent liability of Turner, and we treat the
plaintiff's action as solely against the commission.

mission). Instead, she was paid $23,263, prompting her to complain of "misleading and false advertisement" to the Attorney General who forwarded her complaint to the commission. In an administrative hearing before the commission, she maintained that the defendant had violated G. L. c. 93A. A hearing officer, in a decision adopted by the commission, ruled that the commission is not subject to the provisions of that statute, and in any event, had not violated it. He found that the commission's advertisement of an average prize of $50,000 was made in good faith and that the plaintiff was induced to play Mass Millions by the advertised size of the jackpot (eleven million dollars) and not because of the advertisements relating to the second prize. The hearing officer concluded that the plaintiff had been paid the amount due her under the commission's then applicable parimutuel rules.

The plaintiff appealed the commission's decision to the Superior Court, seeking judicial review pursuant to G. L. c. 30A in a complaint which, as amended, also contained three common law counts alleging breach of contract, deceit and negligent misrepresentation, together with a count alleging violation of G. L. c. 93A, § 9. The judge affirmed the commission's decision and, acting on the parties' cross motions for judgment on the pleadings, Mass.R.Civ.P. 12(c), 365 Mass. 754 (1974), allowed that of the commission. Subsequently, a second judge denied the plaintiff's motion for relief from judgment and allowed the commission's second motion for judgment on the pleadings with respect to the common law counts and the count under G. L. c. 93A.[2] In this appeal the plaintiff raises two issues.

1. *The G. L. c. 93A claim*. The plaintiff invokes c. 93A, claiming the commission is a "person" engaged in trade or

[2]Although the plaintiff's amended complaint can be read to state that her action against the commission followed her acceptance of payment of the prize, the commission did not raise as a defense the regulation which provides that such a payment operates as a discharge of the commission and the director from further liability or responsibility. 961 Code Mass. Regs. § 2.45 (1986). The parties do not argue such an issue on appeal. Contrast *Craft* v. *Capital Dist. Regional Off Track Betting Corp.*, 107 A.D.2d 952, 953-954 (N.Y. 1985). We proceed, therefore, to address the issues relating to the sufficiency of the plaintiff's amended complaint. See *Sampson* v. *Lynn*, 405 Mass. 29, 30 (1989).

commerce and, therefore, subject to its provisions.[3] She cites no cases, nor are we aware of any, holding that statutorily created bodies such as the commission are proper defendants under c. 93A. It is generally accepted that the Commonwealth cannot be impleaded in its courts except where an act of the Legislature clearly manifests its consent. *Morash & Sons, Inc.* v. *Commonwealth*, 363 Mass. 612, 615 (1973). *Commonwealth* v. *ELM Med. Labs., Inc.*, 33 Mass. App. Ct. 71, 77-79 (1992). "Chapter 93A contains no explicit indication that governmental entities are to be liable under its provisions." *United States Leasing Corp.* v. *Chicopee*, 402 Mass. 228, 232 (1988). See also *All Seasons Servs., Inc.* v. *Commissioner of Health & Hosps. of Boston*, 416 Mass. 269, 271 (1993).

Although it is apparent that c. 93A does not expressly expose the commission to suit, we need not rely on that ground since we conclude that the commission is not a "person"[4] engaged in "trade or commerce." "[I]t is a widely accepted rule of statutory construction that general words in a statute such as 'persons' will not ordinarily be construed to include the State or political subdivisions thereof." *Hansen* v. *Commonwealth*, 344 Mass. 214, 219 (1962). See also *Commonwealth* v. *ELM Med. Labs., Inc.*, *supra* at 76-77; *Kilbane* v. *Secretary of Human Servs.*, 14 Mass. App. Ct. 286, 286-287 (1982) (holding that since the Commonwealth does not come under the definition of "person" in G. L. c. 4, § 7, Twenty-third, it cannot be held liable under G. L. c. 266, § 91, which proscribes false advertising by "[a]ny person"). Even if we assume the commission is a person within the statutory definition, compare *Boston* v. *Aetna Life Ins. Co.*, 399 Mass. 569, 575 (1987),[5] amenability to suit under the statute cannot be considered apart from the context of the particular acts under

---

[3]General Laws c. 93A, § 9(1), as appearing in St. 1979, c. 406, § 1, proscribes "injur[y] [of any person] by another person's use or employment of any method, act or practice declared to be unlawful by section two or any rule or regulation issued thereunder." Section 2(*a*) declares as unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce."

[4]"Person" is defined in G. L. c. 93A, § 1(*a*), as inserted by St. 1969, c. 813, § 1, as "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entity."

[5]The Supreme Judicial Court noted in *Boston*, 399 Mass. at 571, that if there is a standing requirement in G. L. c. 93A, § 11, the city of Boston met that test as "a 'person who engages in the conduct of any trade or

review. See *Planned Parenthood Fedn. of America, Inc.* v. *Problem Pregnancy of Worcester, Inc.*, 398 Mass. 480, 492-493 (1986) ("PP, Inc.'s status as a 'charitable' corporation is not, in and of itself, dispositive of the issue whether c. 93A applies").[6] "Thus, the proscription in § 2 of 'unfair or deceptive acts or practices in the conduct of any trade or commerce' must be read to apply to those acts or practices which are perpetrated in a business context." *Lantner* v. *Carson*, 374 Mass. 606, 611 (1978). See also *Barrett* v. *Massachusetts Insurers Insolvency Fund*, 412 Mass. 774, 775 (1992); *Poznik* v. *Massachusetts Med. Professional Ins. Assn.*, 417 Mass. 48, 52 (1994). We must therefore determine whether the commission acts in a business context as contemplated by the statute.

The Legislature has mandated the commission to "conduct a state lottery," G. L. c. 10, § 24, as inserted by St. 1971, c. 813, § 2, and to establish a fund consisting "of all revenues received from the sale of lottery tickets . . . [i]n order to provide local property tax relief and continue services at the local level." *Id.* at § 35, as amended through St. 1977, c. 185. The activities of the commission are driven by legislative mandate, not business or personal objectives. Compare *Barrett* v. *Massachusetts Insurers Insolvency Fund, supra* at 777. In that respect, it stands in sharp contrast to State-regulated racetracks which "are private proprietary corporations engaged in trade and commerce." *DePasquale* v. *Ogden Suffolk Downs, Inc.*, 29 Mass. App. Ct. 658, 662 (1990).[7] Moreover, the conduct of a lottery generally is prohibited and

commerce.' " The case subsequently was distinguished in *All Seasons Servs., Inc.* v. *Commissioner of Health & Hosps. of Boston*, 416 Mass. at 272, where the court noted that Boston City Hospital acted as an assignee of its patients' claims against the defendants.

[6]The plaintiff mistakenly relies on *Pierce* v. *Dew*, 626 F. Supp. 386 (D. Mass. 1986), for the proposition that the government is a person subject to c. 93A liability. In that case, the Federal judge acknowledged that "Chapter 93A does not by its terms specifically apply to public agencies," but held that the Secretary of the United States Department of Housing and Urban Development, in his capacity as a landlord, is subject to suit under c. 93A as a "person," citing the specific application of c. 93A to landlord-tenant relations. *Id.* at 387-388.

[7]The Commonwealth asserts the actions of the commission are exempt from c. 93A by the terms of § 3, as inserted by St. 1983, c. 242, which states that nothing in c. 93A "shall apply to transactions or actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the commonwealth. . . ." We

criminalized by statute. See, e.g., G. L. c. 271, §§ 7 & 9. The commission's lotteries exist in an environment where similar lawful activities within the Commonwealth consist only of government sponsored lotteries, and "raffles" and "bazaars" conducted by certain nonprofit organizations under permits issued pursuant to statutory authority. See G. L. c. 271, § 7A. Thus created, protected and regulated by and pursuant to statute, the commission's activities hardly resemble endeavors conducted in a conventional business context. Given this dissimilarity, we conclude that "[t]he deterrence goals of c. 93A are inapplicable" to the commission's lottery activities. *Poznik* v. *Massachusetts Med. Professional Ins. Assn., supra* at 53.

2. *The common law administrative claims.* The plaintiff asserts she is entitled to litigate the common law counts in her amended complaint because they are independent and preexisting causes of action.[8] She also argues she was not required to raise these causes of action before the commission because it is without jurisdiction to hear them or to grant her appropriate relief. Such views misperceive the proper relationships between courts and administrative agencies. See *Murphy* v. *Administrator of the Div. of Personnel Admn.,* 377 Mass. 217, 220-222 (1979).

The commission is authorized by statute to determine the types of lotteries and the sizes of prizes to be awarded and to establish rules and regulations it deems necessary or desirable. See G. L. c. 10, § 24. It is beyond dispute that where the Legislature has entrusted such matters to an administrative agency, its adjudicatory proceedings must be utilized before there may be resort to the courts. See *St. Luke's Hosp.* v. *Labor Relations Commn.,* 320 Mass. 467, 469-470 (1946). Cf. *East Chop Tennis Club* v. *Massachusetts Commn. Against Discrimination,* 364 Mass. 444, 451-452 (1973). With the exception of her claim of violation of c. 93A, everything which the plaintiff placed before the commission is a subject well within its jurisdiction and discretion and properly was ad-

---

cannot construe that section as applying to the operations of the commission at issue in this case. Contrast *DePasquale* v. *Ogden Suffolk Downs, Inc.,* 29 Mass. App. Ct. at 663.

[8]The plaintiff asserts she is not precluded from pursuing her common law contract claim because the Commonwealth did not waive its immunity in contract as it did in tort in G. L. c. 258, § 1. See *Morash & Sons, Inc.* v. *Commonwealth,* 363 Mass. at 614-616. We do not reach this issue since our decision in this section rests entirely on other grounds.

dressed at the administrative hearing. At that hearing, conducted without any limitation of issues,[9] plaintiff's counsel summed up her view of the issues as misrepresentation and false advertising by the commission, and argued the applicability of c. 93A, concluding that the plaintiff was "asking for what she bargained for." Thus, the plaintiff put before the commission the substance of the causes of action which she later formulated as separate counts in the Superior Court. The focus of all these counts is on whether the plaintiff is entitled to a prize of $50,000 and the record shows the commission addressed all the relevant factual issues inherent in the question.

By purchasing a ticket the plaintiff entered into a contractual arrangement with the commission and is deemed to have reasonable notice of the pertinent regulations and rules of the game. See *Ruggiero* v. *State Lottery Commn.*, 21 Mass. App. Ct. 686, 689 (1986). See also *DePasquale* v. *Ogden Suffolk Downs, Inc.*, 29 Mass. App. Ct. at 661. In its decision, the commission determined any contractual issue when it concluded that the prize properly was calculated in accordance with its regulation applicable to parimutuel payoffs. 961 Code Mass. Regs. § 2.54(7) (1991). There is no contention in the pleadings, nor has it been argued to us, that the commission did not follow its regulations and rules. The commission's decision also resolved the claims of deceit and misrepresentation in finding that the advertising was prepared in good faith, that there was no reliance by the plaintiff on it and that, in any event, if c. 93A were applicable, there was no violation of its provisions.[10] Thus, there was no issue presented to the Superior Court that is appropriate for direct

---

[9]The commission's regulations permit a claimant to appeal to the commission from an adverse decision of the director pursuant to G. L. c. 30A, which provides for a full and fair hearing. 961 Code Mass. Regs. § 2.38 (4) (1986). G. L. c. 30A, §§ 10 & 11.

[10]Responding to the plaintiff's claim that the commission continued to advertise a $50,000 average prize during an approximately four-month period when it was aware of an average of less than $30,000, the decision contained a finding that the advertisement was made "upon sales expectations that were determined in good faith" by persons in the business of making such projections. Because the plaintiff in her appeal does not challenge the commission's findings, we have no occasion to further consider this issue.

judicial determination outside of review pursuant to G. L. c. 30A, § 14(7), and the judge therefore did not err in allowing the defendants' motion for judgment on the pleadings.

*Judgments affirmed.*