AMANDA BARRETT, administratrix,[1] *vs.* MASSACHUSETTS
INSURERS INSOLVENCY FUND.

Suffolk. May 7, 1992. - June 5, 1992.

Present: LIACOS, C J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Practice, Civil*, Motion to dismiss. *Massachusetts Insurers Insolvency
Fund. Consumer Protection Act*, Availability of remedy, Insurance,
Trade or commerce. *Words*, "Trade," "Commerce."

An action arising from an unpaid claim within the coverage of an insur-
ance policy issued by an insolvent insurer could not be maintained
under G. L. c. 93A against the Massachusetts Insurers Insolvency
Fund, where that entity did not engage in a "trade" or "commerce"
and its activities were not performed within a "business context." [775-
777]


CIVIL ACTION commenced in the Superior Court Depart-
ment on January 22, 1991.

A motion to dismiss was heard by *Elbert Tuttle,* J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Frances L. Robinson* (*Willie J. Davis* with her) for the
plaintiff.

*Joseph C. Tanski* (*Jo Anne Rosenblum* with him) for the
defendant.

LYNCH, J. The plaintiff appeals from a judgment of the
Superior Court allowing the defendant's motion to dismiss
the plaintiff's complaint for failure to state a claim on which
relief can be granted. Mass. R. Civ. P. 12 (b) (6), 365 Mass.
754 (1974). We transferred the appeal here on our own mo-
tion and now affirm.

---

[1] Of the estate of Robert Barrett.

"In evaluating allowance of the motion to dismiss, we accept as true the factual allegations of the complaint." *Manning* v. *Zuckerman*, 388 Mass. 8, 9 (1983). *Nader* v. *Citron*, 372 Mass. 96, 97-98 (1977). We summarize these allegations: The plaintiff is the administratrix of the estate of her husband, who died of bullet wounds sustained while on the premises of the Celtic Tavern in the Charlestown section of Boston. She brought an action against Sever Street, Inc. (Sever), the owner and operator of the Celtic Tavern, and ultimately obtained a verdict against Sever, in her favor, in .the amount of $200,000. Sever's insurance carrier, Integrity Insurance Company (Integrity), became insolvent and the defendant assumed the handling of Integrity's affairs pursuant to the provisions of G. L. c. 175D (1990 ed.). Despite repeated requests, the defendant refused, neglected, and failed to effectuate a prompt, fair, and equitable settlement after liability had become reasonably clear, in violation of G. L. c. 93A (1990 ed.).

The Superior Court judge ruled that the plaintiff could not maintain a G. L. c. 93A claim because the defendant does not engage in a "trade" or "commerce" and its activities are not performed within a "business context." We agree.

General Laws c. 93A, § 2 (*a*), states, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." We have stated that "the proscription in [G. L. c. 93A,] § 2 of 'unfair or deceptive acts or practices in the conduct of any trade or commerce' must be read to apply to those acts or practices which are perpetrated in a business context." *Lantner* v. *Carson*, 374 Mass. 606, 611 (1978). "[W]e need to look at the particular circumstances to determine whether the acts complained of were committed within a 'business context.'" *Planned Parenthood Fed'n of Am., Inc.* v. *Problem Pregnancy of Worcester, Inc.*, 398 Mass. 480, 493 (1986). See also *Begelfer* v. *Najarian*, 381 Mass. 177, 190 (1980). Certain standards apply for determining whether a party is engaged in "trade or commerce." Factors to be considered include the character of the party, the na-

ture of the transaction, the activities engaged in by the party, and whether the transaction was motivated by business or personal reasons. *Id.* at 191.

The plaintiff argues that the character of the defendant is the same as that of an insurer[2] and as such it is engaged in trade or commerce as defined under c. 93A.[3] The plaintiff misunderstands the character of the defendant. The defendant is a "statutorily mandated, nonprofit, unincorporated association of all insurers writing certain kinds of direct insurance in the Commonwealth . . . available to settle certain unpaid claims which arise out of and are within the coverage of an insurance policy issued by an insolvent insurer." *Commissioner of Ins.* v. *Massachusetts Insurers Insolvency Fund*, 373 Mass. 798, 799 (1977). The defendant is, in essence, simply a conduit to which certain noninsolvent insurers, authorized to do business in the Commonwealth, pay a pro rata amount to enable the defendant to pay "covered claims"[4] to insureds whose insurance companies become insolvent subsequent to the issuance of their policies and

---

[2]The plaintiff bases this contention on the fact that G. L. c. 175D, § 5 (1990 ed.), sets forth the powers and duties of the defendant and states, in part, that the defendant shall, "(*b*) be deemed the insurer to the extent of its obligation on the covered claims and shall have all rights, duties and obligations of the insolvent insurer to such extent."

[3]General Laws c. 93A, § 1 (*b*) (1990 ed.), defines "[t]rade" and "commerce" as including "the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed . . . and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth."

[4]"Covered claim" is defined in G. L. c. 175D, § 1 (2), as "an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer and (*a*) the claimant or insured is a resident of the commonwealth; or (*b*) the property from which the claim arises is permanently located in the commonwealth.

" 'Covered claim' shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association; provided, that a claim for any such amount, asserted against a person insured under a policy issued by an insurer which has become an insolvent insurer, which, if it were not a claim by or for the benefit of a reinsurer, insurer, insurance pool or underwriting association, would be a 'covered claim' may be filed directly

claims. G. L. c. 175D. The nature of the transaction and the activity engaged in is the payment of the "covered claims," and transactions are motivated by legislative mandate, not business or personal reasons.

"The Legislature originally enacted c. 93A to improve the commercial relationship between consumers and businessmen. By requiring proper disclosure of relevant information and proscribing unfair or deceptive acts or practices, the Legislature strove to encourage more equitable behavior in the marketplace." *Manning* v. *Zuckerman*, 388 Mass. 8, 12 (1983). We have stated that "[t]he use of the words 'distribution of any services' in conjunction with words such as 'sale' and 'lease' indicates an intent that the services be distributed in exchange for some consideration or that there must be other strong indications that the services are distributed in a business context." *Planned Parenthood Fed'n of Am., Inc.* v. *Problem Pregnancy of Worcester, Inc., supra* at 493. In light of the definitions in § 1 (*b*) and of the traditional meaning of the words "trade" and "commerce" we conclude that the Legislature did not intend to include the activities engaged in by an entity such as the defendant within the reaches of c. 93A. See *id.* at 494.

*Judgment affirmed.*

---

with the receiver of the insolvent insurer, but in no event may any such claim be asserted against the insured of such insolvent insurer."