Billings, Thomas P., J.
For the reasons that follow, the defendants’ Motion to Dismiss Counts III-VI of the Complaint is ALLOWED.

FACTS

The allegations of the Complaint, taken as true for purposes of the present Motion, are as follows. The plaintiff water company is a private Massachusetts corporation. Defendants Ryan, Collins, and Arcudi are members of the Board of Selectmen, and defendants Morin, Tarca and Bird are members of the Water and Sewer Commission, of the Town of Hopedale.
Prior to 1948, the plaintiff owned Hopedale’s water supply system. In that year, however, by contract, the plaintiff granted that system to the Town. The contract provided that the plaintiff would supply the Town’s water until the Town was “water self-sufficient.”
The contract set a per-gallon price for water and a price for fire protection services. Since then, the plaintiff has petitioned for rate and fee increases, and has been granted them by the Department of Public Utilities, now known as the Department of Telecommunications and Energy.
In 2004, the Town stopped paying fire protection charges, and demanded payment for “unreasonable and baseless wheeling charges.” In December 2004, the Town disconnected its water system from the company for about two weeks, and was water self-sufficient during that period. On June 1, 2005, the Town began selling water to the Town of Mendon.
The Complaint pleads the following counts:
I. Breach of Contract.
II. Breach of Warranty (sic) of Good Faith and Fair Dealing.
III. Quantum Meruit.
IV. Promissoiy Estoppel.
V. Equitable Estoppel.
VI. M.G.L.c. 93A.
VII. Conversion.
VIII. Declaratory Relief.
Damages are sought in the amount of $87,834.54, as well as a declaration that by virtue of the Town’s breach of its contract, the plaintiff is no longer obligated to supply water to the Town, and an injunction prohibiting the Town from selling water to Mendon.
The defendants seek dismissal of Counts III, IV, V, and VI, and additionally dismissal of the Selectmen defendants as to all counts, on grounds described below.

DISCUSSION

A. Counts III - V
The defendants first seek dismissal of Counts III (Quantum Meruit), IV (Promissory Estoppel), and V (Equitable Estoppel), on the ground that these claims run afoul of the Uniform Procurement Act, G.L.c. 30B. Sections 17(a) and (b) of that Act provide:
(a) All contracts in the amount of five thousand dollars or more shall be in writing, and the governmental body shall make no payment for a supply or service rendered prior to the execution of such contract.
(b) Subject to the provisions of section three A of chapter forty [pertaining to recordable instruments of title in real estate, and not applicable here], a contract made in violation of this chapter shall not be valid, and the governmental body shall make no payment under such contract. Minor informalities shall not require invalidation of a contract.
The SJC has
held that a party cannot evade the statutory limitations on a municipality’s contracting power by rendering services and subsequently seeking recovery based on alternative theories. See United States Leasing Corp. v. Chicopee, 402 Mass. 228, 231-32 (1988), and cases cited (estoppel): Adalian Bros. v. Boston, 323 Mass. 629, 632 (1949) (implied contract); Lowell v. Massachusetts Bonding & Ins. Co., 313 Mass. 257, 272 (1943) (quantum meruit).
Park Drive Towing, Inc. v. Revere, 442 Mass. 80, 83 n.7 (2004) (decided under the similar written contract requirement, applicable to cities, in G.L.c. 43, §29). See also Majestic Radiator Enclosure Co., Inc. v. County Comm’rs of Middlesex, 397 Mass. 1002, 1003-04 (1986) (denying recovery under theories of quantum meruit and estoppel where provisions of Chapter 30B not complied with; “the public interest in adherence to statutory bidding procedures overrides any equitable considerations”).
Because Counts III, IV, and V “seek[ ] recovery on alternative theories” (i.e., other than on the terms of the written contract), and because no facts are pleaded which would constitute an emergency excusing com *440 pliance with Chapter 30B, those Counts must be dismissed.[2]

B. Count VI

Success for the plaintiff on Count VI, for violation of Chapter 93A, will depend on a showing that the Town was acting in “trade or commerce” in its dealings with the plaintiff. Thus far, the appellate courts have not passed on the question of whether a municipality may ever be found to have engaged in trade or commerce so as to bring it within the statute’s reach. Park Drive Towing, Inc. v. Revere, 442 Mass. 80, 86 (2004); Hurton v. Puorro, 2006 WL 540907 (Super.Ct. 2006; Burnes, J.).
It is at least clear from the cases that when a city or town negotiates, contracts, or otherwise deals with commercial actors in connection with the provision of municipal services, it has not itself engaged in “trade or commerce” as Chapter 93A uses the term. See, e.g., Park Drive Towing (procurement of snowplowing services); Boston Hous. Auth. v. Howard, 427 Mass. 537, 538-39 (1998) (housing authority’s rental of apartments); Peabody, Inc., N.E. v. Marshfield, 426 Mass. 436, 439-40 (1998) (construction of municipal waste facility); All Seasons Services, Inc. v. Commissioner of Health and Hospitals of Boston, 416 Mass. 269, 271-72 (1993) (procurement of food and vending services for city hospital); Clean Harbors of Braintree, Inc. v. Board of Health of Braintree, 409 Mass. 834, 841 (1991) (operation of hazardous waste facility); U.S. Leasing Corp. v. Chicopee, 402 Mass. 228, 232-33 (1988) (lease of computer system for school department).
As to most of what is alleged in the complaint, it is clear that the City was engaged in the traditional municipal function of providing potable water and fire protection to its inhabitants, and so was not engaged in trade or commerce. The only arguable exception is in paragraph 11, in which it is alleged that on June 1, 2005 the Town began selling water to the Town of Mendon.[3] This is, however, expressly contemplated and permitted by the first paragraph of G.L.c. 40, §38, which provides as follows:
A city, by a two thirds vote of its city council, ratified by a majority of the voters thereof at' an election called for the purpose, or a town, by action of its selectmen, ratified by a majority of its voters present and voting thereon at a town meeting at which the voting list shall be used, may, for the purpose of supplying water to itself and its inhabitants, purchase of any municipal or other corporation the right to take water from its sources of supply or from its pipes; or may purchase its whole water rights, estates, franchises and privileges, and thereby become entitled to all its rights and privileges and subject to all its duties and liabilities; or, by its board of water commissioners or officers performing like duties, may contract with any such corporation for a supply of water. Any municipal corporation, by its water department, may make such a sale or enter into such a contract to supply water to a city or town.
The evident purpose of the statute is to permit cities and towns, whose water supplies may be unevenly distributed and/or developed among them, to share water and the cost thereof, somewhat as municipal fire departments render mutual aid. See G.L.c. 49, §59A. Such sharing is as much a traditional municipal function as is procuring water from a water company, or supplying it to the town’s inhabitants. It is not, in other words, “trade or commerce” so as to subject a municipality to liability under Chapter 93A. Count VI will therefore be dismissed.
C. The Selectmen Defendants
Finally, it is the Water and Sewer Commission, not the Board of Selectmen, which has “exclusive charge and control of the water department and water system.” G.L.c. 41, §69B (defining powers of water commissioners); see St. 1982, c. 578 (investing the Hopedale Board of Water and Sewer Commissioners with all the powers and duties of water commissioners). When a town has a water department, its contracts for the supply of water — whether procuring it from a water company or another town, or supplying it to another town — are made “by its water department.” G.L.c. 41, §38. The members of the Water and Sewer Commission therefore are, in their representative capacities, proper defendants here as to the remaining counts. The Selectmen are not, and will be dismissed.

ORDER

For the reasons that follow, the defendants’ Motion to Dismiss Counts III - VI of the Complaint is ALLOWED. Counts III, IV, V and VI are dismissed, and defendants Ryan, Collins, and Arcudi are dismissed as to all counts.

The plaintiffs arguments that water is “energy” and that a private water company is a “governmental entity,” so as to except the dealings of these parties from Chapter 30B under sections 1(3) and 1(9) thereof, so torture the plain language of the statute as not to require further discussion.

It is not clear from the bare-bones allegations of the Complaint why the plaintiff would complain of this. The 1948 contract is not attached or much described, and the Complaint does not allege that the contract prohibits Hopedale’s sale of water to a neighboring town (indeed, the complaint is not explicit as to whether the water sold to Mendon was supplied by the plaintiff).